FILED

2014 Mar-25  PM 01:24
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### EASTERN DIVISION

| | |
|---|---|
| **AUTO OWNERS INSURANCE COMPANY,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) **Case No.: 5:11-cv-04096-VEH** |
| **v.** | ) |
| | ) |
| **GUARDIAN BUILDERS INC., et al,** | ) |
| | ) |
| **Defendants.** | ) |

---

## <u>MEMORANDUM OPINION</u>

This declaratory judgment action was filed by the plaintiff, Auto Owners Insurance Company ("Auto Owners"), against the defendants, Guardian Builders, Inc. ("Guardian"), Randall and Melissa Uselton ("the Useltons"), and Edgar Wayne Tackett.  (Docs. 1, 11).  Guardian was the general contractor which built the Useltons' home.  Tackett was the sole owner/officer of Guardian.  (Doc. 40-9 at 7). Auto Owners issued Commercial General Liability (CGL) policy number 054617-38561274 ("the policy") to Guardian.[1]  The plaintiff seeks a declaration that it has no

---

[1]  The plaintiff named as a defendant "Guardian Builders, <u>Inc.</u>," not "Guardian Builders, <u>LLC</u>." Only "Guardian Builders, LLC" or "Guardian Builders, LLC and Value Plus Construction," not Guardian Builders, Inc. and not Tackett, are the named insureds on the policy. (Doc. 40-3 at 27, 28, 29, 30, 31, 32, 33; doc. 40-4 at 22, 23, 39, 40, 41, 42, 43, 44, 45, 46; doc. 40-5 at 41, 42, 43, 44, 45, 46, 47, 48, 49, 50; doc. 40-6 at 45, 46, 47, 48, 49, 50; doc. 40-7 at 3, 4, 7, 8). Because this was not raised by the parties, and was not discussed in the recommendation,

duty under the policy to pay an arbitration award issued against Guardian, and in favor of the Useltons.  (Doc. 1 at 2, 6).[2]

On October 15, 2012, the plaintiff filed a motion for summary judgment.  (Doc. 40).  On November 5, 2012, the Useltons filed a response to the motion.  (Doc. 45).  Guardian and Tackett did not respond to the motion.  On November 13, 2012, the plaintiff filed a reply.  (Doc. 47).  On September 16, 2013, the magistrate recommended that the motion be granted in part and denied in part. (Doc. 51).  The case is before the court on the plaintiff's objections to the recommendation, filed September 30, 2013.  (Doc. 52).  The defendants have not responded to the objections.

For the reasons stated herein, the magistrate's recommendation is **ADOPTED** to the extent that it is consistent with this memorandum opinion, and to the extent to which no objections were made.  To the extent that the objections are inconsistent with this opinion, they are **OVERRULED**.  The magistrate's conclusion that a fact

---

this court will assume that this is a non-issue, and will further assume that Guardian Builders, Inc. is covered under the policy to the same extent as Guardian Builders, LLC.

[2] Although the complaint states that the award was entered "against Guardian"  (doc. 1 at 2), on its face, the award states that it was issued against Guardian Builders, <u>LLC</u> <u>and</u> Tackett. (Doc. 1 at 6).  Neither the complaint, nor the amendment to the complaint (which merely adds Tackett as a defendant), claims that the policy covered Tackett.  Neither document seeks a declaration as to Tackett's rights.  This issue also was not raised in the recommendation or by the parties.

question remains as to whether the defendants have shown that there is coverage for the award is not adopted.   The plaintiff's objection to that conclusion is **SUSTAINED**.  Summary Judgment will be **GRANTED** to the plaintiff by separate order.

## I.   STANDARDS

### A.   <u>Summary Judgment Standard</u>

The Eleventh Circuit has summarized the summary judgment burden, including when a defendant seeks judgment as a matter of law on the basis of an affirmative defense, as follows.

> Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c). Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to "come forward with specific facts showing that there is a genuine issue for trial."  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986) (quotations and emphasis omitted).  If the movant bears the burden of proof on an issue, because, as a defendant, it is asserting an affirmative defense, it must establish that there is no genuine issue of material fact as to any element of that defense.  *See Martin v. Alamo Community College Dist.*, 353 F.3d 409, 412 (5th Cir.2003).

*International Stamp Art, Inc. v. U.S. Postal Service*, 456 F.3d 1270, 1273-74 (11th

Cir. 2006).[3]

## B.   District Court Review of Report and Recommendation

After conducting a "careful and complete" review of the findings and recommendations, a district judge may accept, reject, or modify the magistrate judge's report and recommendation.  *See* 28 U.S.C. § 636(b)(1) ("A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."); *Williams v. Wainwright*, 681 F.2d 732 (11th Cir. 1982) (quoting *Nettles v. Wainwright*, 677 F.2d 404, 408 (5th Cir. 1982), *overruled on other grounds by Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996)).[4]

---

[3] The "facts" are determined for summary judgment purposes only.  They may not be the actual facts.  *See Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1400 (11th Cir. 1994) ("[W]hat we state as 'facts' in this opinion for purposes of reviewing the rulings on the summary judgment motion [ ] may not be the actual facts" (internal quotation marks omitted) (quoting *Swint v. City of Wadley*, 5 F.3d 1435, 1439 (11th Cir. 1993))).  Where the facts are in dispute, they are viewed in the manner most favorable to the plaintiff.  *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993) ("The district court should resolve all reasonable doubts about the facts in favor of the non-movant, and draw all justifiable inferences in his [or her] favor." (internal quotation marks omitted) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc))).

[4] The Eleventh Circuit has adopted as binding precedent all Fifth Circuit decisions issued before October 1, 1981, as well as all decisions issued after that date by a Unit B panel of the former Fifth Circuit.  *Stein v. Reynolds Sec., Inc.*, 667 F.2d 33, 34 (11th Cir. 1982); *see also United States v. Schultz*, 565 F.3d 1353, 1361 n.4 (11th Cir. 2009) (discussing the continuing validity of *Nettles*).

The district judge may also receive further evidence or recommit the matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1).

A district judge "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). This requires that the district judge "give fresh consideration to those issues to which specific objection has been made by a party." *Jeffrey S. v. State Bd. of Educ.*, 896 F.2d 507, 512 (11th Cir. 1990) (citing H.R. Rep. No. 94-1609, 94th Cong., 2nd Sess., reprinted in 1976 U.S. Code Cong. & Admin. News 6162, 6163). In contrast, those portions of the R&R to which no objection is made need only be reviewed for clear error. *Macort v. Prem, Inc.*, 208 Fed. App'x. 781, 784 (11th Cir. 2006).[5]

"Neither the Constitution nor the statute requires a district judge to review, *de novo*, findings and recommendations that the parties themselves accept as correct."

---

[5] *Macort* dealt only with the standard of review to be applied to a magistrate's factual findings, but the Supreme Court has held that there is no reason for the district court to apply a different standard to a magistrate's legal conclusions. *Thomas v. Arn*, 474 U.S. 140, 150, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985). Thus, district courts in this circuit have routinely applied a clear-error standard to both. *See Tauber v. Barnhart*, 438 F. Supp. 2d 1366, 1373–74 (N.D. Ga. 2006) (collecting cases). This is to be contrasted with the standard of review on appeal, which distinguishes between the two. *See Monroe v. Thigpen*, 932 F.2d 1437, 1440 (11th Cir. 1991) (when a magistrate's findings of fact are adopted by the district court without objection, they are reviewed on appeal under a plain-error standard, but questions of law remain subject to *de novo* review).

*United States v. Woodard*, 387 F.3d 1329, 1334 (11th Cir. 2004) (internal quotation marks omitted) (quoting *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003)).  It is incumbent upon the parties to timely raise any objections that they may have regarding a magistrate judge's findings contained in a report and recommendation, as the failure to do so subsequently waives or abandons the issue, even if such matter was presented at the magistrate judge level.  *See*, *e.g.*, *United States v. Pilati*, 627 F.3d 1360 at 1365 (11th Cir. 2010) ("While Pilati raised the issue of not being convicted of a qualifying offense before the magistrate judge, he did not raise this issue in his appeal to the district court.  Thus, this argument has been waived or abandoned by his failure to raise it on appeal to the district court.").  However, the district judge has discretion to consider <u>or</u> to decline to consider arguments that were not raised before the magistrate judge.  *Stephens v. Tolbert*, 471 F.3d 1173, 1176 (11th Cir. 2006); *see also Williams v. McNeil*, 557 F.3d 1287, 1292 (11th Cir. 2009) ("Thus, we answer the question left open in *Stephens* and hold that a district court has discretion to decline to consider a party's argument when that argument was not first presented to the magistrate judge.").

"Parties filing objections must specifically identify those findings objected to. Frivolous, conclusive or general objections need not be considered by the district court." *Nettles*, 677 F.2d at 410 n.8.  "This rule facilitates the opportunity for district

judges to spend more time on matters actually contested and produces a result compatible with the purposes of the Magistrates Act." *Id*. at 410.  Indeed, a contrary rule "would effectively nullify the magistrate judge's consideration of the matter and would not help to relieve the workload of the district court." *Williams*, 557 F.3d at 1292 (internal quotation marks omitted) (quoting *United States v. Howell*, 231 F.3d 615, 622 (9th Cir. 2000)).

## II.    THE MAGISTRATE'S FINDINGS OF FACT

There is no objection to the magistrate's findings of fact.  The court has reviewed them for clear error and found none.  Accordingly, the magistrate's findings of fact are **ADOPTED**, verbatim, by this court, and set out herein as follows:

> Guardian Builders built a home for Randall and Melissa Uselton that was completed in 2008. The Useltons first occupied it in February of 2008. Very soon after moving in, the Useltons noticed several problems, including water intrusion into the home. They complained to Guardian Builders at that time.

> Guardian Builders had liability insurance through Auto-Owners pursuant to a policy issued in 2007 that provided as follows:

> **SECTION I – COVERAGES**

> **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

> **1.     Insuring Agreement**

> a. We will pay those sums that the insured

becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. We may at our discretion investigate any claim or "occurrence" and settle any claim or "suit" that may result. But:

(1)     The amount we will pay for damages is limited as described in Section III – Limits of Insurance; and

(2)     Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverage A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverage A and B.

a.      This insurance applies to "bodily injury" and "property damage" only if:

(1)     The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2)     The "bodily injury" or "property damage" occurs during the policy period; . . . .

* * *

2. **Exclusions**

This insurance does not apply to:

\* \* \*

**j.    Damage to Property**

"Property damage" to:

\* \* \*

(7)    That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

**k.    Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l.    Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

**m.    Damage to Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1)    A defect, deficiency, inadequacy or dangerous condition in "your product"

9

or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

\* \* \*

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

### 2. Duties In The Event of Occurrence, Offense, Claim, Suit

a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

(1) How, when and where the "occurrence" or offense took place;

(2) The names and addresses of any injured persons and witnesses; and

(3) The nature and location of any injury or damage arising out of the

10

"occurrence" or offense.

(See Doc. 40-3 through 40-9).

The policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Doc. 40-6 at 18). It defines "property damage" as "[p]hysical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it." (*Id.* at 19).

Upon receiving notice from the Useltons that there were problems with the home, Guardian Builders returned to the home numerous times in an unsuccessful effort to remedy the problems. Guardian Builders expended $10,000 before April 8, 2008, in connection with digging up the front yard to re-waterproof the front exterior wall of the home. The builder, Wayne Tackett, believed that this had stopped the water intrusion into the home. (Tackett Depo. at 54, 59-64, 68-69). Tackett did not notify Auto-Owners about these expenditures. (*Id.* at 64). Although Tackett testified that he believed he had taken care of the problems, the Useltons testified that he had not.

On April 4, 2008, Tackett wrote a letter to the Useltons advising them that he would discontinue any further warranty work in their home unless he was paid $18,628.53 he claimed that he was still owed for the construction of the residence. (Melissa Uselton Depo. at Ex. 7). At the time he wrote the letter to the Useltons in April 2008, Tackett stated that he did not believe the relationship had "gone sour," but he had not been paid all of the money he believed he was owed for building the residence. (Tackett Depo. at 50-51). In the letter, he noted that "we have been very patient, but now we are getting concerned." (*Id.* at 51). He also states that he had left numerous messages on Randall Uselton's cell phone but had not received any return calls. (*Id*. at 52).

The Useltons paid Tackett another $15,000 thinking this would cause Tackett to take care of the problems with the home which they had outlined for him in a list of problems that needed to be addressed. (Randall Uselton Depo. at 13-14; Melissa Uselton Depo. at 62-63).

Tackett is not sure how many trips he made to the Uselton residence to try to repair the problems; however, he testified that he made more than ten trips. (Tackett Depo. at 46-49). However, the Useltons saw very little work being done on these problems. The water continued to enter their home. (Melissa Uselton Depo. at 74). It damaged the flooring and some of the furniture in the residence. (*Id.* at 75). However, according to Tackett, the leakage was caused by water running up against the house due to improper grading of the yard, which was work performed by someone hired by the Useltons and not by Tackett or one of his subcontractors.

Tackett testified that had this other contractor hired by the Useltons done the grading correctly, the water would have been diverted away from the house. (Tackett Depo. at 60). Tackett testified that, even though he thought he had finished everything by April 2008, he admits that he did some work after that time. (Tackett Depo. at 53-54). According to Tackett, Guardian Builders dug up the Useltons' front yard again after his April 4, 2008, letter because there was still water leaking into the house. This cost him an additional $20,000. (*Id.* at 69). According to Tackett, he was never paid for the work he did attempting to fix the Useltons' house. He testified that the only money he received from them, including the $15,000 he received in April 2008, was money he was owed under his contract with the Useltons for construction of the home. (*Id.* at 95-96, 112-13). In October 2008, Tackett sent a crew out to repair concrete at the Uselton residence, but Mr. Uselton refused to allow them to work and sent them away. (*Id.* at 71).

In addition to water leaking into the home, the Useltons noticed that there were places in the home where water poured off the porches and settled on all the sidewalks around the house. This washed out plants and shrubs in the front of the house. It also came in through the back windows of the house. (Melissa Uselton Depo. at 57). Water leaking into the house damaged sheetrock and molding in the garage. It also resulted in mold. (*Id.* at 50-51). Water also has damaged a balcony in the home. (Tackett Depo. at 109-10).

Subsequently, the Useltons hired a home inspector. (Randall

Uselton Depo. at 14-15). As a result of the inspection, the Useltons sought out an attorney. (*Id.* at 15). When the problems with their property were not fixed by Tackett and Guardian Builders, counsel for the Useltons sent Tackett a letter dated December 8, 2008, advising them of the problems, seeking mediation through the North Alabama Better Business Bureau and seeking to have Guardian Builders voluntarily agree to repair the defects cited in the letter. (Melissa Uselton Depo. at Ex. 9).

After receiving the letter, Mr. Tackett notified his insurance company, on December 18, 2008. (Tackett Depo. at 65). He testified that he had not notified Auto-Owners before that time because he "didn't see a need to." (Tackett Depo. at 66). According to Tackett, he believed the work that he was doing on the Uselton residence was "warranty work" that he was responsible for completing. (*Id.*). He only decided to contact Auto-Owners after he received a letter from the Useltons' attorney. (*Id.*). According to Tackett, he was not aware that the problems had caused any damage to the Uselton house prior to contacting his insurance company. (*Id.* at 93). In his statement to the insurance adjuster, Tackett advised that, as far as he knew at that time, the only damage to the Uselton residence was that some sheetrock in one room may have gotten wet. (Doc. 40-9 at 11).

After receiving notice of the demand letter from Tackett, Auto-Owners conducted an insurance coverage analysis and, on February 8, 2009, issued a letter to Guardian Builders stating that it had made an initial determination that no coverage was available. After Guardian Builders went out of business, Guardian Builders' policy with Auto-Owners was cancelled effective October 2, 2009. (Tackett Depo. at 13-14, 32-33, and Ex. 19).

On April 13, 2010, the Useltons sued Guardian Builders and Wayne Tackett in the Circuit Court of Madison County regarding the construction of their house and the resulting damage. The Circuit Court ordered the dispute to arbitration pursuant to an arbitration agreement. In November 2011, after arbitration, the Useltons were awarded $307,111.05. In December 2011, a supplemental award of attorney fees

was made, bringing the total award to $452,275.20. The damages awarded by the arbitrator were set out as follows:

A. The rough grading and the final grading: $14,000

B. The sidewalk in front of the house: $ 8,000

C. The driveway: $ 4,000

D. The decks and balconies-surfaces and flashing: $12,000

E. The decks/balconies structural and support: $10,000

F. The front foundation wall: $100,000

G. The front porch-structural and surface: $22,000

H. The brick work veneer and related: $35,000

I. Two masonry block piers in the basement: $ 1,000

J. Repair and/or replace interior surfaces: $ 8,500

K. Soffits, eaves and underside of decks/balconies: $ 7,500

L. Landscaping: $10,000

M. Balustrade/Baluster repairs: $ 3,000

N. Cleanup: $ 4,000

O. Management/supervision/contractor profit: $24,000

P. Temporary housing: $ 5,000

Q. For all other damages of any nature: $29,000

R. Legal Fees: To be determined on submission

S. Arbitrator costs: $10,311.05

(Doc. 1 at Ex. A, Decision of Arbitrator, at 11).

For the most part, the damages awarded by the arbitrator were for defects resulting from the negligent construction of the residence. However, some of the damages were a subsequent consequence of the negligent construction. For instance, the report cites the incorrect and/or negligent installation of the Seal-O-Flex deck surface as the cause of water leaking and resulting damage to adjacent materials. It noted, with regard to Item D above, that in addition to replacing the deck surface material with the proper flashing and caulking, the underlayment must be inspected for damage and replaced as needed. (*Id.* at 9, ¶ 4). Likewise, the report also states, with regard to Item J above, that it is necessary to

> [r]epair, paint and/or replace interior surfaces as needed to correct damage caused either by the moisture and water that has been allowed to enter the structure or that will result as the needed repairs are made. Includes walls, floors and ceilings. Replacement and/or sheetrock in the basement is included in this item as is the repair and/or replacement of any subsurface wood that must be replaced.

(Id. at 10, ¶ 10). However, nearly all of the property damage resulting from the negligent construction appears to have been to items installed by Guardian Builders during the construction of the home. The only evidence submitted to reflect that there was any damage to property or items installed by the Useltons or anyone not employed by Guardian Builders was damage to the Useltons' furniture and to hardwood floors which were installed through Melissa Uselton's father who owns Carpet One. (Melissa Uselton Depo. at 29-30). The arbitrator's report does not state at what point in time after the construction of the house that these damages occurred.

(Doc. 51 at 1-11) (bold in original).

## III.   ANALYSIS

The plaintiff objects that the magistrate's recommendation: 1) identified the wrong issues before the court; 2) improperly determined that the issue of timely notice of the claim was for the trier of fact to decide; 3) improperly found that the issue of coverage was for the trier of fact to decide; and 4) failed to find that the "your work" exclusion applied to exclude coverage.  The court will address each objection in turn.

### A.   <u>There Is No Error in the Magistrate's Statement of the Issue</u>

The plaintiff first objects to the way the magistrate framed the issue in this case.  The magistrate's report states:

> This litigation involves a question regarding whether an insurance policy issued by Auto-Owners Insurance Company (Auto Owners) provides coverage for damages that resulted from the defective construction of a home by Guardian Builders, Inc. (Guardian Builders).

(Doc. 51 at 1).  The plaintiff argues:

> Actually, the issues were and are (i) did Defendant Guardian Builders adduce substantial evidence that it complied with the conditions in the policy, and (ii) did Guardian Builders adduce substantial evidence of what, if any, dollar amount entered against Guardian Builders in an arbitration award is within the indemnity provisions of that policy.

Doc. 52 at 1-2) (citations omitted).

The court finds no error in the magistrate's statement.  The issue in this case is whether there is coverage.  The plaintiff's statements merely focus on sub-issues relevant to that determination.[6]

**B.**      **There Is no Error in the Determination that the Issue of Notice Is for the Trier of Fact**

Auto Owners next objects to the magistrate's determination that a factual question exists on the issue of whether Guardian gave timely notice to Auto Owners, as required under the policy.

Section IV.2.a. of the policy provides, as a condition to coverage, that the insured "must see to it that [Auto Owners is] notified as soon as practicable of an 'occurrence' or an offense which may result in a claim."  (Doc. 40-4 at 2).  The plaintiff's motion for summary judgment argued that the ten month delay from the time the Useltons notified Tackett and Guardian[7] of the problem (February 2008), until Guardian, through Tackett, notified Auto Owners (December 2008), breached this condition to coverage.  (Doc. 40 at 11-13).

"'[T]he failure of an insured to comply within a reasonable time with such conditions precedent in an insurance policy requiring the insureds to give notice of

_____

[6] These sub-issues are actually the same as some of the plaintiff's objections.  They are considered by the court below.

[7] The arbitrator and parties treat Guardian and Tackett as one and the same.

17

an accident or occurrence releases the insurer from obligations imposed by the insurance contract.'" *Travelers Indemnity Co. of Connecticut v. Miller,* 86 So. 3d 338, 342 (Ala. 2011) (quoting *Reeves v. State Farm Fire & Cas. Co.,* 539 So.2d 252, 254 (Ala.1989)).  In this case, the policy requires notice "as soon as practicable." "The term 'as soon as practicable' has been interpreted 'to mean that notice must be given within a reasonable time in view of the facts and circumstances of the case.'" *Travelers Indemnity*, 86 So. 3d at 342 (*quoting Haston v. Transamerica Ins. Servs.,* 662 So.2d 1138, 1141 (Ala.1995) (internal quotations omitted)).  The Alabama Supreme Court has stated:

> Only two factors are to be considered in determining the reasonableness of a delay in giving notice to the insurer: the length of the delay and the reasons for the delay. Whether notice of the occurrence or claim was given to the insurer within a reasonable time rests on the reasonableness of the delay.  Prejudice to the insurer from any such delay in providing notice is not a factor.

*Id.* (*citing U.S. Fidelity & Guar. Co. v. Baldwin County Home Builders Ass'n,* 770 So.2d 72, 75 (Ala.2000)) (internal citations omitted).  The court continued:

> Where facts are disputed or where conflicting inferences may reasonably be drawn from the evidence, the question of the reasonableness of a delay in giving notice is a question ... for the [trier of fact]. Conflicting inferences concerning the reasonableness of a delay may sometimes be drawn where the insured offers evidence of mitigating circumstances.
>
> However, where an insured fails to show a reasonable excuse or

18

the existence of circumstances which would justify a protracted delay, the Court should as a matter of law hold that there has been a breach of the condition as to notice. . . ..

Thus, the determination of the fundamental issue, whether notice of the occurrence or claim was given to the insurer within a reasonable time, rests on the reasonableness of the delay. . .. If conflicting inferences can be drawn from the evidence, the question of reasonableness is submitted to the trier of fact. If the facts are undisputed, however, and the insured does not show justification for the protracted delay, the court may find the delay unreasonable as a matter of law.

*Id.* at 343-44 (internal quotations and citations omitted).  Finally, the court noted:

A five-month delay in giving notice is sufficiently protracted as to require the insured to offer evidence of a reasonable excuse for the delay. See *Phoenix Assurance Co. v. Harry Harless Co.,* 303 F.Supp. 867 (N.D.Ala.), aff'd, 414 F.2d 794 (5th Cir.1969) (four-month delay); *Pharr v. Continental Cas. Co.,* 429 So.2d 1018 (Ala.1983) (eight-month delay); *Southern Guar. Ins. Co. v. Thomas,* 334 So.2d 879 (Ala.1976) (six-month delay).

*Id.* at 344.

In his opinion, the magistrate noted the cases cited in the preceding paragraph,

then wrote:  "Thus, it is necessary to determine whether Tackett has established a

reasonable excuse for this delay."  (Doc. 51 at 14).  The magistrate then wrote:

Tackett testified that when he became aware of the problem with water entering the residence, he took steps to try to alleviate the problem. He considered this "warranty work." He did not consider it to be an "occurrence" under the policy. In fact, according to Tackett, the only damage he was aware of was that some sheetrock in the basement had gotten wet. Furthermore, he also concluded that the water was

coming into the residence as a result of poor grading of the property performed by another company hired by the Useltons, and not the result of any work that had been performed by Guardian Builders. Consequently, according to Tackett, it was not until he received a letter from the Useltons' attorney that he had any indication that a claim would result from his work.

. . .

In this case, while Tackett returned to the property in an attempt to cure the problem, he testified that he was not aware of the problem and that he believed it was actually the result of work done by another contractor. Under these circumstances, a factual question exists regarding whether a reasonable and prudent person would believe this occurrence would give rise to a claim for damages against him.

(Doc. 51 at 14-16).

The plaintiff argues in its objection that the facts cited by the magistrate go only to Tackett's <u>subjective</u> belief, and that "reasonableness of the delay" should be judged according to an <u>objective</u> standard.  Indeed, the Alabama Supreme Court has stated that the standard is an objective one.  In *Pan Am. Fire & Cas. Co. v. DeKalb-Cherokee Counties Gas Dist.*, 289 Ala. 206, 266 So. 2d 763 (1972), the court, citing 45 C.J.S. *Insurance* § 1056, stated:

"Clearly, notice is necessary when there has been such an occurrence as would lead a reasonable and prudent man to believe that it might give rise to a claim for damages. In this connection the test [is] not a subjective one measured merely by the good faith of insured, but is an objective one, and hence the mere fact that insured believes that an injury resulting from an accident is slight, or that he does not believe that any valid claim will arise out of an accident, is not of itself an

excuse for failure to give notice of the accident to insurer . . ."

*Pan Am.*, 266 So. 2d at 771; *see also*, *CIE Serv. Corp. v. Smith*, 460 So. 2d 1244, 1247 (Ala. 1984) (The reasonable and prudent man test "is not a subjective one measured merely by the good faith of the insured, but an objective one."); *Progressive Specialty Ins. Co. v. Steele ex rel. Steele*, 985 So. 2d 932, 945 (Ala. Civ. App. 2007) (Thomas, J.) (concurring and dissenting) ("Thus, it is not a party's subjective opinion as to the reasonableness of the delay in providing notice to his insurance company that is determinative; rather, it is an objective reasonableness test that our courts apply in such circumstances."); *Phoenix Assur. Co.*, 303 F. Supp. at 869-70) (*quoting Young v. Travelers Ins. Co.*, 119 F.2d 877, 879 (5th Cir. 1941) ("[I]t was held that a subjective test should not be applied as to the insured's duty to give notice 'as soon as practicable,' so as to excuse the insured from reporting on the ground that he was not at fault and no claim would be made against him. 'The duty of giving notice is not measured in terms of good faith.'"). That being said, when the insured gives a reason for the delay, Alabama courts still seem to focus on subjective belief.

For example, in *U.S. Fidelity & Guarantee Co. v. Bonitz Insulation Co. of Alabama (Bonitz)*, 424 So. 2d 569 (Ala. 1982), a case cited by the magistrate, Bonitz, on June 9, 1972, entered into a contract with the City of Midfield, Alabama, for the

construction of the roofing and insulation on a gymnasium as part of a larger school construction project.  It subcontracted part of the roofing job to Vulcan Roofing Company. When the roof began to leak, Bonitz was informed of the problem by two letters, one in November of 1972, and another in July of 1973.  It referred the issue to Vulcan, who attempted, unsuccessfully, to repair the roof.  The problem continued "over the next several years," and the roof eventually had to be completely replaced in 1978.  On August 18, 1977, the City of Midfield filed suit against Bonitz and others.  Only then did Bonitz provide notice of the claim by forwarding the lawsuit to its insurers.  Noting that the applicable policy required notice "as soon as practicable," the Alabama Supreme Court wrote:

> Hunter Price, president of Bonitz, testified that it was not unusual for leaks of this type to occur, that he was unaware of the extent of the problem, and that he thought that Vulcan Roofing Company was taking care of the problem. We find this testimony sufficient to raise conflicting inferences as to the reasonableness of the delay.

*Bonitz*, 424 So. 2d at 573.

The plaintiff argues that the facts of *Bonitz* are "like night and day from those in the instant case." (Doc. 52 at 3).  It points out that, in *Bonitz,* there was testimony that the insured was <u>unaware</u> of the extent of the problem and thought that it was being taken care of by another entity.  It then notes that, in the instant case

Guardian Builders admittedly not only knew the extent of the problems,

it spent $30,000 (without Auto-Owners' consent) in multiple unsuccessful efforts to fix them, including two excavation projects in the front yard of the home in an effort to re-waterproof the front exterior wall of the home. Moreover, as many times as Guardian Builders was at the Uselton home ("more than ten times"), it could not have failed to see all of the other problems later noted by the arbitrator, or recognized the mental distress being caused to the Useltons.

(Doc. 52 at 3-4).

The plaintiff is correct that the facts of the instant case do show that Guardian was more involved in the attempts to fix the problem, and had a greater knowledge of the extent thereof, that the insured in *Bonitz*. However, these facts alone do not mean that the insured's duty to notify the insurer had been triggered.

Illustrative of this point is *U.S. Fidelity & Guarantee Co. v. Baldwin Cnty. Home Builders Ass'n, Inc. (Baldwin County Home Builders)*, 770 So. 2d 72 (Ala. 2000). In *Baldwin County Home Builders*, the Crowes, on or about January 10, 1994, purchased a new house from the Baldwin County Home Builders Association ("BCHBA"). The house had been constructed by L.M. Smith Construction Company, Inc., of which L.M. Smith was the president. Soon after the Crowes moved in to the house, they began experiencing drainage problems in the yard, which the court described as follows:

Specifically, water tended to collect and form a pool at the base of an oak tree in the southwest corner of the lot. The house was served by a septic tank, and the tree was located at the edge of the soil fill covering

the septic tank. Eventually, the water would flow from that pool into the street.

*Baldwin County Home Builders*, 770 So. 2d at 72.  In the early part of 1994, Robert Crowe informed Smith of this problem.  Smith then referred Crowe to John Barr of Heaton Septic Tank Services.  That company was the subcontractor which had installed the Crowes' septic tank.

After Barr visited and inspected the property, Crowe wrote him a letter proposing various ways to fix the water problem.  However, Barr took no action. On January 13, 1995, about a year after first informing Smith of the problem, Crowe sent Smith a letter "stating that something had to be done to correct the seepage from the septic-tank field lines and that the Crowes expected the homebuilder's warranty to cover any necessary repairs."  *Id.* at 73.  The letter stated:

> "The [principal] issue concerns the seepage from the septic field in the front yard of our residence. I am also enclosing a copy of the letter previously written to your subcontractor, Heaton Septic Tank Services at Bay Minette, Alabama which generally describes the problem and the prescribed corrective actions. [Inasmuch] as the work was identified many months ago and despite numerous attempts to resolve the matter, no actions were taken, I am advising you of my intention to seek an independent solution to the problem. When satisfactory corrective actions have been completed, I will forward to you for payment, a detailed invoice for the services rendered.
>
> "....
>
> "We look forward to resolving these issues. This home is absolutely

> beautiful, the work of a true artisan. We have enjoyed and we expect to continue to enjoy our lives in this wonderfully livable home."

*Id.* at 73.  On January 16, 1995, Smith responded to Crowe's letter and stated that he had informed Heaton Septic Tank Services about Crowe's proposed corrections. In the same letter, Smith also offered to contact the designer of the septic-tank system, Seth Moore, of Moore Engineering Company. The Crowes heard nothing further from Smith, Heaton Septic Tank Services, or Moore Engineering Company.

On March 18, 1995, Crowe sent Smith another letter requesting correction of the septic-tank seepage problem.  In this letter, Crow wrote:  "Please understand that for months I have sought an amicable solution because I am not a litigious individual. Nevertheless, I have the resolve to find the end of this matter." *Id.* at 73.  In a May 29, 1995, letter, Crowe advised Smith that he had taken corrective action and requested reimbursement for $498.31 which he said he had spent on the project. On June 6, 1995, Smith responded to Crowe with a letter stating that the problem had been misdiagnosed as a septic-tank problem when it was actually related to the underground water table.  The court noted:

> Smith then referred the matter to BCHBA. The Crowes filed a claim with BCHBA for reimbursement for the drainage repairs. In June 1995, BCHBA refused to reimburse Crowe because, it said, damage caused by subsurface water was not covered by the Crowes' homebuilder's warranty. In January 1996, the Crowes sued BCHBA and Smith, seeking damages based on claims of negligence, breach of contract, fraud, and

civil conspiracy.

BCHBA and Smith were insured under a general commercial liability policy issued by USF&G. On January 18, 1996, BCHBA notified USF&G of the Crowes' lawsuit. However, USF&G denied coverage, stating that it had not received timely notice of the claim. USF & G also denied coverage on the breach-of-contract claim, the fraud claim, and the negligence claim (alleging negligent design and/or installation) on the basis that the USF & G policy provided no coverage for liability based on such claims.

BCHBA and Smith sued for a judgment declaring that USF&G was obligated to defend them against the Crowes' claims. BCHBA, Smith, and USF & G filed motions for summary judgment. On October 20, 1998, the trial court entered a summary judgment in favor of BCHBA and Smith, declaring that USF&G was liable to defend them in the Crowes' action. On November 30, 1998, USF&G appealed.

*Id.* at 73-74.

The policy in *Baldwin County Home Builders*, like that in this case, required notice of an "'occurrence' or offense" "as soon as practicable." *Id.* at 74. In deciding the issue, the court first referred to *Bonitz*, saying, "this Court held that an insured's five-year delay in notifying its insurer of an 'occurrence,' a delay based on the insured's believing that the subcontractor was repairing the leaking roof, was reasonable." *Id.* at 75-76. However, the court then seemed to draw a distinction between *Bonitz* and the conduct before it by saying:

Although Smith referred Crowe to the subcontractors, Heaton Septic Tank Services and Moore Engineering, Smith remained in constant contact with the subcontractors, and Smith was probably aware that the

subcontractors were not correcting the seepage problem at the Crowe residence. In Crowe's letter to Smith dated January 13, 1995, Smith was told that Heaton Septic Tank Services had taken no action.

*Id.* at 76. The court found that the issue of reasonableness of notice was for the trier

of fact where:

–      Smith testified that he and BCHBA did not notify USF&G until after the lawsuit had been filed because they had believed until then that the problem could be "worked out."

–      BCHBA and Smith argued that because Crowe did not respond to Smith's June 6 letter informing Crowe that the problem would not be covered under his homebuilder's warranty, BCHBA and Smith considered the issue resolved.

–      BCHBA and Smith argued that the letters from Crowe to Smith did not indicate that the Crowes would sue.

–      BCHBA and Smith argued that notice to USF&G was not required, because, they believed that they were not liable for the alleged injury to the Crowes because the drainage problem was not covered under the homebuilder's warranty.

*Id.* at 76. The Alabama Supreme Court noted that in making these arguments

BCHBA and Smith offered mitigating circumstances, leading to conflicting inferences concerning the reasonableness of the delay; their excuses could be found to justify the protracted delay. Thus, the matter should be resolved by the trier of fact.

*Id.* at 76.[8]

---

[8]  In *Baldwin County Home Builders,* the trial court had granted summary judgment in favor of the insureds without an opinion, simply "stat[ing] on its docket sheet that a summary judgment was entered in favor of the plaintiffs and against USF&G." *Baldwin County Home*

Like the instant case, the circumstances present in *Baldwin County Home Builders* put the insureds on notice of a problem immediately after the owners moved into the home.  Unlike the instant case, the contractor in *Baldwin County Home Builders* referred the homeowners to a subcontractor.  However, this court feels that the referral to a subcontractor was not the determinative fact in *Baldwin County Home Builders*.  As noted by the court, "Smith remained in constant contact with the subcontractors, and Smith was probably aware that the subcontractors were not correcting the seepage problem at the Crowe residence.  In Crowe's letter to Smith dated January 13, 1995, Smith was told that Heaton Septic Tank Services had taken no action."  *Id.* at 76.  Thus, the court distinguished the facts before it from the case where a contractor merely refers to the issue to a subcontractor and forgets all about it.  Instead, the court focused on what the insureds <u>subjectively believed</u>.  *See, id.* at 76 (noting that Smith and BCHBA "believed . . . that the problem could be 'worked out,'" "considered the issue resolved," and thought they were not liable "because the drainage problem was not covered under the homebuilder's warranty.").  This is comparable to the facts of the instant case, where Tackett considered this "warranty

---

*Builders*, 770 So. 2d at 75. Even though there was no opinion by the trial court, the decision effectively found as a matter of law that late notice <u>was</u> reasonable under these circumstances. Even though it reversed the trial court, the Alabama Supreme Court found that these circumstances still created a fact question.  If the court had thought otherwise, it could have so stated and rendered judgment for USF&G.  It did not.

work" instead of an "occurrence" under the policy, and thought that the problem was the result of poor grading of the property performed by another company hired by the Useltons.

It is true that, in the instant case, Guardian, through Tackett, performed work on the home in an attempt to repair the problem, a fact not present in *Baldwin County Home Builders*. The plaintiff argues, *inter alia*, that his failure to give notice was less reasonable for that reason. Of course, *Baldwin County Home Builders* had one additional fact not present in the instant case–a letter sent to the insured that at least <u>implied</u> the possibility of litigation. Each respective fact is only relevant to the extent that it goes to what the insured <u>should have known</u>. If the Alabama Supreme Court found a fact issue under the circumstances in *Baldwin County Home Builders*, this court cannot say, as a matter of law, that there is no fact question in the instant case, which deals with similar facts, a much short period of time, and no express or implied threat of litigation by the homeowners.[9]

### C.   <u>The Determination that the Issue of Coverage Was for the Trier of Fact Was in Error</u>

In its motion for summary judgment, the plaintiff argued:

_____

[9] Although the plaintiff cites to <u>many</u> cases other than *Bonitz*, it does not examine the facts of any of those cases in any of its filings. Thus it has not pointed the court to any case, with similar facts, in which the deciding court has <u>not</u> found a fact question precluding summary judgment as to coverage.

Given the coverage provisions of the Auto-Owners policy, this means that Guardian Builders and Wayne Tackett must demonstrate what portion, if any, of the judgment against them was for "bodily injury" or "property damage" occurring during the policy period and caused by an "occurrence."

(Doc. 40 at 15).  The magistrate judge wrote:

> According to plaintiff, the arbitration award and the judgment rendered on that award do not reveal what portion fits within those coverage provisions. Furthermore, the Useltons testified that the water intrusion into their home continued into and throughout 2011, after the coverage period under the final policy period ended on October 2, 2009. However, unlike the defendants in [*Am. States Ins. Co. v. Martin*, 662 So. 2d 245 (Ala. 1995)],[10] the Useltons have not conceded that the damage occurred outside the policy coverage period. In fact, they assert that at least some of the damage did occur during the coverage period. <u>It will be up to them to demonstrate that they did, in fact, suffer damages during this time period and the dollar amount attributable to that time period. This is a fact issue not subject to summary judgment.</u>

(Doc. 51 at 18) (emphasis added).  The plaintiff objects to this conclusion.

The subject policy provides that the plaintiff must "pay those sums that the

insured becomes legally obligated to pay as damages because of 'bodily injury' or

'property damage' to which this insurance applies."  It also provides that

> [t]his insurance applies to "bodily injury" and "property damage" only if:
>
> (1)   The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

---

[10]  The magistrate judge did not examine the *Martin* case in further detail.

30

> (2) The "bodily injury" or "property damage" occurs
> during the policy period; . . . .

(Doc. 40-3 at 40). Further, under the type of CGL policy at issue in the instant case,

> faulty workmanship itself is not an occurrence but . . . faulty
> workmanship may lead to an occurrence if it subjects personal property
> or other parts of the structure to "continuous or repeated exposure" to
> some other "general harmful condition" . . . and, as a result of that
> exposure, personal property or other parts of the structure are damaged.

*Town & Country Prop., L.L.C. v. Amerisure Ins. Co.*, 111 So. 3d 699, 706 (Ala.

2011); *see also, Shane Traylor Cabinetmaker, L.L.C. v. Am. Res. Ins. Co., Inc.*, 126

So. 3d 163, 168 (Ala. 2013) (same). The Alabama Supreme Court has since clarified

further that "faulty workmanship performed as part of a construction or repair project

may lead to an occurrence if that faulty workmanship subjects personal property or

other parts of the structure *outside the scope of that construction or repair project* to

continuous or repeated exposure to some other general harmful condition and if, as

a result of that exposure, that personal property or other *unrelated* parts of the

structure are damaged." *Owners Ins. Co. v. Jim Carr Homebuilder, LLC*, No.

1120764, 2013 WL 5298575 at *5 (Ala. Sept. 20, 2013) (emphasis in original)

(internal quotation marks omitted).[11] Under Alabama law, the burden is on the insured

---

[11] The plaintiff and the Useltons agree that this is the proper standard in this case. (Docs. 40 at 16; 45 at 11; 47 at 5-8).

"as the one seeking coverage to prove that coverage existed within the terms of the policy." *Alabama Hosp. Ass'n Trust v. Mut. Assur. Soc. of Alabama*, 538 So. 2d 1209, 1216 (Ala. 1989).[12]

This fact issue <u>can</u> be decided on summary judgment. As in this case, where the movant does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115-16 (11th Cir. 1993). First, the movant may simply show that there is an absence of evidence to support the non-movant's case on the particular issue at hand. *Id.* at 1116. In such an instance, the non-movant must rebut by either (1) showing that the record in fact contains supporting evidence sufficient to withstand a directed verdict motion, or (2) proffering evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. *Id.* at 1116-17. When responding, the non-movant may no longer rest on mere allegations; instead, it must set forth evidence of specific facts. *Lewis v. Casey*, 518 U.S. 343, 358 (1996). The second method a movant in this position may use to discharge its burden is to provide

---

[12] "[T]he Alabama Supreme Court has required the party seeking to recover under the policy to prove the apportionment of the [award] in order to show that some or all of it was for covered damages." *Owners Ins. Co. v. Shep Jones Const., Inc.*, CIV.A. 08-AR-514-S, 2012 WL 1642169 at *9 (N.D. Ala. May 3, 2012), *appeal dismissed* (Nov. 19, 2012) *(citing Alabama Hosp. Ass'n Trust,* 538 So.2d at 1209). The magistrate judge correctly noted the obligation of the insured "through admissible evidence, [to show] that the judgment against it fits within each of the coverage provisions of the policy." (Doc. 51 at 17 (citing *Alabama Hosp. Ass'n Trust*, 538 So. 2d at 1209)).

affirmative *evidence* demonstrating that the non-moving party will be unable to prove its case at trial. *Fitzpatrick*, 2 F.3d at 1116. When this occurs, the non-movant must rebut by offering *evidence* sufficient to withstand a directed verdict at trial on the material fact sought to be negated. *Id.*

In its motion for summary judgment, the plaintiff argued both that the defendants can provide no evidence of coverage, and also provided evidence tending to negate coverage.  It stated:

> [T]he arbitration award and the judgment rendered on that award do not reveal what portion fits within those coverage provisions. (Melissa Uselton Depo., Exhibit 12). Moreover, the Defendants admit that they do not know what amount, if any, of the arbitration award and judgment consisted of bodily injury or property damage, or non-covered economic loss such as diminution in value. (Guardian Builders Answers to Interrogatory 3; Uselton Answer to Interrogatory 3; Randall Uselton Depo., 24-25). In addition, the Useltons and their attorney are adamant that they sought no award for bodily injury or mental anguish, and that no such award was made. (Melissa Uselton Depo., 65-67, 69-70; Randall Uselton Depo., 16,18, 22-23).
>
> As their attorney put it during the depositions of the Useltons, "If it is not in black and white on the arbitration award, why are you asking about it...". (Melissa Uselton Depo., 72). Furthermore, the Useltons testified that the water intrusion into their home continued into and throughout 2011 (Melissa Uselton Depo., 73-74, 77, 87; Randall Uselton Depo., 17-18), after the coverage period under the final policy period had ended on December 2, 2009. (Tackett Depo., 13-14, 32-34).
>
> Thus, they cannot even carry the burden of proof on the issue of whether the award includes an element for property damage or bodily injury during a policy period, much less how much of the award was for

either of those elements. *Cf., Kizer v. Finch*, 730 So. 2d 1197 (Ala. Civ. App. 1998) (it was impossible to determine what portion of a general verdict consisted of punitive damages); *Kumar v. Lewis*, 561 So. 2d 1082, 1086 (Ala. 1990).

(Doc. 40 at 15-16). This showing was sufficient to shift the burden to the defendants.

In response, the defendants wrote:

In the instant case, the damages awarded by the arbitrator all relate to the arbitrator's findings set forth in pages 3 – 5 of the award.[13]

----

[13]   In this statement, the insureds reference the conclusion of the arbitrator's award which reads in part:

The failure of [Guardian and Tackett] to construct the house in a workmanlike manner and/or to properly utilize the appropriate materials has damaged the [Useltons]. [The Useltons] are awarded damages plus legal fees and forum costs. The items for which damages are ordered to be paid are as follows:

(Doc. 1 at 9). Thereafter follows a list of 18 separate categories of problems with the home/elements of damage to the Useltons, explaining the work which needed to be done (and why) where appropriate. The arbitrator then set out the award for each category as follows:

A. The rough grading and the final grading: $14,000
B. The sidewalk in front of the house: $ 8,000
C. The driveway: $ 4,000
D. The decks and balconies-surfaces and flashing: $12,000
E. The decks/balconies structural and support: $10,000
F. The front foundation wall: $100,000
G. The front porch-structural and surface: $22,000
H. The brick work veneer and related: $35,000
I. Two masonry block piers in the basement: $ 1,000
J. Repair and/or replace interior surfaces: $ 8,500
K. Soffits, eaves and underside of decks/balconies: $ 7,500
L. Landscaping: $10,000
M. Balustrade/Baluster repairs: $ 3,000
N. Cleanup: $ 4,000
O. Management/supervision/contractor profit: $24,000
P. Temporary housing: $ 5,000
Q. For all other damages of any nature: $29,000

34

> Each and every one of those items in pages 3 – 5 is an item where some completed portion of the Useltons' house was damaged by a subcontractor's faulty workmanship on another part of the house.  In other words, everything found by the Arbitrator is clearly covered by Plaintiff's Policy, both under the Policy's language and also under the Alabama Supreme Court's interpretation of what is covered by such policies.

(Doc. 45 at 15).  As the magistrate judge correctly noted, "the arbitration award and the judgment rendered on that award do not reveal what portion fits within [the] coverage provisions." (Doc. 51 at 180.)[14]  Accordingly, this vague and conclusory reference to the arbitrator's award, and the policy language, does not satisfy the insureds' burden to provide <u>evidence</u> showing how the damages awarded are for either property damage or personal injury <u>covered under the policy</u>.  Also, the defendants do not even allege, must less provide evidence, that <u>any</u> of the award was for damage that occurred <u>within the policy period</u>. The fact that the defendants did not carry their burden at the summary judgment stage is decisive of this issue and this case.  *See, Alabama Hosp. Ass'n Trust*, 538 So. 2d at 1216 (summary judgment

---

R. Legal Fees: To be determined on submission
S. Arbitrator costs: $10,311.05

[14]  The magistrate judge noted that the award's problems are "not due to a lack of specificity on the Useltons' part but, rather, on the part of the arbitrator in making the award." (Doc. 51 at 20). In such cases, there is typically an "impossible burden of proof" for the insured. *Duke v. Hoch*, 468 F.2d 973, 980 (5th Cir. 1972); *see also, Alabama Hosp. Ass'n Trust*, 538 So. 2d at 1216 (issue of coverage "impossible to resolve" when there is a general verdict).  However, the defendants have not shown why they should be relieved from their burden of proof merely because the award is not helpful.

appropriate where insured could not demonstrate that damages awarded in general

verdict were covered.).[15]

**D.    The Failure To Exclude Coverage Based on the "Your Work" Exclusion Was Not in Error**

The magistrate judge also wrote:

> The Auto-Owners policy excluded damage to property defined as "your work." "Your work" is defined to include "[w]ork or operations performed by you or on your behalf . . . ." (Doc. 40-6 at 20). The exclusion denies coverage for "'property damage' to 'your work' arising out of it or any part of it and included in the 'products-completed operations hazard.'" (Id. at 5). The result of this is that no damage to property built by Guardian Builders or any of its subcontractors is covered by the policy regardless of whether the damage occurred as a result of negligence in the construction process or resulted from the negligence. In other words, if the roof leaked and damaged the walls and an outside deck and all of these areas were the work of Guardian Builders or its subcontractors, there is no coverage for any of this damage. The only coverage would be for property damage to the property not built or installed by Guardian Builders or its subcontractors. While there is testimony that the water leakage resulted in damage to furniture and to the hardwood floors installed by the Useltons, there is no specific item in the arbitration decision which is set out as damages for these items. There is, however, an item which lists damages of $8,500 to "repair and/or replace interior surfaces." While this would not cover any damage to furniture, it could cover damage to the hardwood floors if the Useltons can demonstrate that the damage, or the extent of the damage, occurred during the life of the policy/policies at issue. This can be accomplished by special interrogatories to the jury.

---

[15]   The defendants' brief <u>does</u> discuss at length various cases from Alabama and other jurisdictions on the proper interpretations of CGL policies. (Doc. 45 at 15-27). Still, in that discussion they neither identify, nor provide evidence of, any item of damage from the award which falls under a coverage provision of the instant policy.

(Doc. 51 at 19). The plaintiff objects as follows:

> The Magistrate also failed to properly apply the "your work" exclusion. He held that it excluded "damage to property built by Guardian Builders or any of its subcontractors" (Doc. 51, pp. 18-19), but failed to apply that principle to any specific portion of the award. Instead, the Magistrate skipped over that analysis in an unsuccessful effort to find a line item in the award that was not within the purview of the exclusion. (Report, Doc. 51, pp. 19-20). As discussed above, the Magistrate found only two that might be, but did not take the next step and recommend that the others were subject to the exclusion. (Report, Doc. 51, pp. 19-20).

(Doc. 52 at 9-10).

"[T]he ultimate burden of proof as to the applicability of the exclusionary clause rests with the []insurer." *Fleming v. Alabama Farm Bureau Mut. Cas. Ins. Co.*, 293 Ala. 719, 722, 310 So. 2d 200, 202 (1975). The plaintiff states that "[t]he Useltons testified that their only complaints were about . . . "faulty workmanship." (Doc. 40 at 17). It argues that the exclusion applies to damage to the work of Guardian and Tackett, as well as to that of their subcontractors. (Doc. 47 at 9). But the plaintiff provides no <u>evidence</u> as to what portion of the award falls under the exclusion.

The general nature of the arbitration award cuts both ways. Just as the defendants have the "impossible burden" of proving coverage, the plaintiff has a similar problem proving that any portion of the award falls under an exclusion. In the absence of evidence proving the application of the exclusion, the magistrate judge's

opinion was not in error.

## IV.    CONCLUSION

Based on the foregoing, the objections will be **SUSTAINED** to the extent that

they argue that the defendants have not provided evidence of coverage.  Otherwise,

the objections will be **OVERRULED**.  By separate order, summary judgment will be

**GRANTED** to the plaintiff.

**DONE** and **ORDERED** this 25th day of March, 2014.

**VIRGINIA EMERSON HOPKINS**
United States District Judge